We have five cases to be presented today on oral argument, and the entire court particularly appreciates the cooperation of the lawyers in helping us to get these arguments rescheduled under tight circumstances. We begin with United States v. Suarez. Mr. Whalen. Good morning. May it please the Court, Counsel. On behalf of Mr. Suarez, I first want to address the issue, the sentencing error that we believe occurred in the case. And I first would say that as the Court has instructed us to do as it relates to the issue of whether or not there was waiver on inadequate briefing, I would simply start by saying I could have done a better job, and I admit that. I think after looking at it and reviewing it, I could have done a more thorough job for this Court to consider it. But I do think, despite that, I do think it's been adequately raised in the brief, and I think it's also been presented for this Court to review as it relates to sentencing. You realize that your difficulty there in terms of waiver is double, that is to say it wasn't raised in the district court, and then you didn't brief, plan or review on appeal. So, I mean, we have a lot of cases where the first is true, but not very many where both are true. You have a pretty steep hill to climb, it seems to me. Well, I agree that obviously it wasn't raised in the district court, and that's why we stated it was plain error for the Court to increase his sentence. And then also if the Court found that we didn't brief it adequately, then it's been waived again. And so, yes, I agree with the Court that it would be an uphill battle. But I do think in our letter brief that we did decide in the case U.S. v. Miranda that briefs are to be construed liberally in determining what issues have been presented on appeal. And we did clearly state that we believe the district court had plainly erred by not submitting a jury finding as to what specific firearm Mr. Suarez was being found guilty of, especially as it related to the 924C. Since the simple handgun would be a five-to-life consecutive versus the sawed-off shotgun, which would have been ten years to life. And in the record, I don't think he was ever adequately noticed of his – the range of punishment on that. And it would have been a jury issue that should have been submitted under the Supreme Court precedent in Apprendi and Allain. And so it was clearly error for his lawyer at the district court level not to either request a jury instruction or object to the jury instructions that he had. Roberts. Is O'Brien not helpful to the analysis? Because you didn't file a reply brief. You did file a 28J, but your principal brief doesn't mention O'Brien. You've never mentioned O'Brien. And as I read the government's brief, their concession of error here was built around O'Brien. Are you not embracing that decision? No, I do embrace that decision. And I — Why never cite it at all? I felt that after they filed their brief and they conceded it, that it was clear that the issue was squarely before the court. And their concession and their citing of O'Brien agreed with our position that we had. And so, therefore, I felt it was — Do you know of any post-O'Brien case that does tease out this issue in a plain error context? No, I don't. Not often. Because would you agree that if, for example, your client had confessed to the shotgun as the gun in furtherance, there would be no alien error, correct? Agreed. I mean, if he had admitted that he possessed it and confessed to it, I think that's true. Now, but I read just in the record there's sporadic references to a confession, and then there's sporadic references to a letter he submitted at sentencing that his lawyer didn't want him to submit. It was hard for me to find whether — where either of those were. There was no acknowledgment as to this gun in either of those items? Right. I don't think he acknowledged that he — and that's why he went to trial. I know. But there was a letter that was given to the sentencing court, it seems like, from him, that his attorney was unhappy was given. Well, I think, you know, if he gives a — I don't necessarily think it then becomes a confession that he waives that error, because it's a constitutional error that should have been submitted to him.  But you're acknowledging from having not objected, we are looking at this purely through the final prong of plain error. So the issue for us is, is there a miscarriage? And my question is, if he confessed or if he sent a letter at sentencing acknowledging this shotgun. I'm not saying he did. I'm asking you, because you must know the record better than I do, whether either of those items exist in this record and were before the sentencing court. I don't think that's an issue in the case. I can't — I don't know it exactly, to answer your question directly. But I do think that he's then in a difficult position at sentencing, you know, asking a judge for, you know, a lighter sentence, and then what he doesn't even know, that he should have had a jury question as related to which firearm he was responsible for. So he's in an untenable position at that point to then — then waive a constitutional error that he has no knowledge of, because it's certainly — his lawyer didn't object to it at the — at the — either at trial or at sentencing when it was put in the pre-sentence report. I mean, his lawyer didn't submit any objections to the pre-sentence report, and that would have been a perfect opportunity. He made no Rule 29 argument as to Count II, did he? He did not. He basically — his Rule 29 argument was very specific. He simply addressed Counts III and IV. He didn't reference Counts I and II. And also, I think, in his closing argument, for lack — for the most part, conceded Counts I and II and then simply focused on Counts III and IV. And so his Rule 29 as related to Count II was a general — didn't even make a Rule 29 argument. I guess I'm just wondering, does that inch us towards no miscarriage? If the guns inches from him on the mattress, the gun in question, he virtually didn't dispute it factually? Well, it is a miscarriage, because I think — because the Court has — the Supreme Court has always said that anything that enhances sentencing has to be submitted to a jury. Unless the defendant admits to it. Right. But he — he pled not guilty and didn't admit to it. Okay. And so — and based on that, it should have been submitted to the jury, I think even regardless of whether he admitted to it in a confession. Say he was arrested and admitted to it in a confession. He still has to be required to have a jury issue submitted on that, because in this particular case, you had two firearms. A jury could have made a decision that, hey, we're only going to — based on — we don't believe his confession. We don't think he was accurate in that, and we're just going to find him guilty of the handgun versus the shotgun. And so by not giving that, it's constitutional error under the precedent. Regardless, I think even if he confessed to it, because I think he's entitled to that jury issue being submitted to a jury to decide whether or not that mandatory minimum applies. Well, you're — you're answering Judge Higginson's question, but you're answering it in regard to the first prong. Was there error, second prong? Was it plain, third prong? Did it affect substantial rights? But over and over again, our Court has said that that's not enough, that the fourth prong adds an additional element. And the question is whether this is one of those rare cases where we would find a miscarriage of justice such that — that an ordinary person would — would think that the error was so bad that it affects one's confidence in the judicial system, that it not only affects but, as the Supreme Court said, seriously affects the integrity of judicial proceedings. Given that the weapon — that there's evidence in the record that the weapon was there, why is this case at the far extreme such that we would exercise our discretion to say not only was it wrong, but it was so wrong that we've got to do something about it? Well, it is a miscarriage of justice because the reason we have developed this precedent, the Supreme Court developed this precedent was to make sure that if someone was going to be held to a higher punishment range of whether it's five to life or ten to life, especially in this case, ten to life, and even — they did it in drug quantity. They clearly said if somebody's going to be subjected to mandatory minimum punishment, that the jury has to make those factual findings. All right. So what — what you seem to be telling us in response to Judge Higginson's question and mine, which was — I was just asking it in a different way, is that in this particular situation where it didn't go to the jury, that satisfying the first three prongs is all you have to do, that that's the end of it, because it's per se, then has to be — has to be reversed. That — I agree with that, because I — when you — And that's precisely what our court — in fact, our in-bank court in Escalante Reyes, and we've said it time and time and time again, is that the first three prongs aren't enough, that the fourth prong really does add something significant, and we've given you two chances now to tell us what — what it is that's so extremely wrong and so extremely horrible about what occurred here that — that you should be able to ask us for a fourth prong relief. Well, he's entitled to fourth prong relief because he got sentenced based contrary to Supreme Court precedent that says in order for him to be subject to a mandatory minimum or an increased punishment, a jury has to make that finding. And they didn't make that finding. And they should have been given that jury charge. They should have been able to make that decision. Mr. Suarez was entitled to that. And the Supreme Court has clearly said that that is what a jury is supposed to do when we come to the mandatory minimums. And it's been their precedent that they've developed over time. And that is a miscarriage of justice. It shouldn't have been a question of whether or not it was included. It should have been clear to the parties that, hey, look, we're — he's got a sawed-off shotgun. He's looking at 10 to life. If he's found guilty of that on a 924C, a jury needs to find that. I think it was very clear. So it isn't — the fourth prong is satisfied because the jury issue should have been submitted. The Supreme Court says it has to be submitted because it increases his punishment. Roberts. But the question I asked you is what time — what case post that decision has been in the plain-error context? In other words, I could see, but correct me if I'm wrong, the time you could have objected would have been any time after indictment all the way through jury charge. You would have said, listen, this — there's a duplicity problem where there are two And then at trial, he never really contested the proof of this particular gun being in furtherance. Then the PSR says, watch out, 10 years, mandatory minimum, still no objection. So over and over again, now, the defense counsel is not alerted. Now, one can just say, well, the lawyer just missed it, even when it's right in front of his face. But what — here's the reason that I would think we wouldn't find miscarriage would be, let's say the lawyer knew there's the problem embedded, but he didn't want it corrected, because one correction could be the government decides to supersede and charges two 924Cs. Would the — this is a question to you. Would the consecutives then stack so it was very smart of the lawyer not to object because you'd have two 924Cs, each being a mandatory minimum? Yes. They would have been stacked. So he was very, very smart to not object. Well, I don't think in — I wasn't trial lawyer, but I would say he wasn't smart to object because now, all of a sudden, his client's sitting there looking at an additional five years that maybe he did not know was coming his way. But he was facing 15 if the proof is so overwhelming. So he's thinking it through. Well, we're not really going to fight this. We're going to get consecutive, maybe an appellate issue. But if I'd actually objected on time, with this proof, it looks like my guy's going away for 15 years. He's in a worse situation. He'd be in a worse situation, but I think from a defense lawyer's standpoint, I think you're kind of in a — the Hobson's choice. The court has clearly said you can't lay behind the log. Well, that's right. You can't lay behind the log and just wait for an issue to potentially, oh, this will be an issue on appeal because you run the risk of waiving it. But on the other hand, I think by him not asking for it, he runs the risk of being ineffective for not asking for a jury instruction. I agree. Should this be dealt with on habeas, on an ineffective assistance of counsel issue? I think it could be dealt on habeas, but I think it's squarely before this Court to fix because I do think if it is not dealt — I think the issue is presented today that if the Court decides not to address it, I do think it's going to get addressed on habeas. I think he would have a valid claim of ineffective assistance on habeas. I think that's clear. And he certainly could get it fixed on habeas for — if it wasn't adequately briefed properly. So I do think that we can't get into the mind of the lawyer, but I think the fact that it came up each and every time, and even when it got to the pre-sentence report and it wasn't objected to, to say — because at that point, Your Honor, if he's thinking about it, he's going, hey, wait, we didn't get a jury issue on it. I need to object now because I'm going to save my client 60 months because Judge Mazant could have said, you know, you're right, or the government could have conceded it at that point and said, yeah, we didn't have a jury finding on it, so therefore, he's only subject to the minimum of five years consecutively. So I can't see how it would be strategically advantaged to not object at the pre-sentence level because he could have saved his client 60 months right there if the parties agreed, and I think knowing Judge Mazant, I think he would have said, no, you're right, we messed that up, and I'm not going to sentence him to the additional 10 years. So I don't — I can't see, Your Honor, a beat trial strategy to run the risk of then trying to address it at the appellate level. Roberts. On just quickly, counts 3 and 4, your sufficiency argument? The sufficiency argument, it's just really the basic argument is ghost of possession, whether or not the government proved it by actual — Is it true that in closing, the argument to the jury was don't trust the child molester? Correct. But then if it's just a credibility call, yeah. Yes. I mean, I understand. I know the jury can consider a co-conspirator's testimony and they get to weigh credibility, and so it was their job to determine credibility in the issue, but we believe based on the evidence it wasn't sufficient for counts 3 and 4. Of course, it would have been helpful had he objected to counts 2 because then if they can't — don't find possession — find him not guilty on 3 and 4, then they couldn't have been able to find him guilty on count 2, but that wasn't objected to. So I do believe that we have presented the issue, the sentencing issue to the court. I do believe all four prongs have been satisfied, and we ask the court to, if it doesn't find the evidence insufficient, that it be remanded for sentencing. Thank you. Thank you, Mr. Whalen. You've saved time for a moment. Ms. Smith? Good morning. May it please the Court? Mr. Whalen? The Court asked, as we've already discussed this morning, three questions of the government on — in the request for appellate briefs. The first one is, did Mr. Suarez waive his challenge to the mandatory minimum sentence based on his failure to adequately brief the issue? Of course, as the case law says, yes, he probably did. He could have. However, the court still has discretion to make that determination, should you consider the fourth error, the fourth prong. The government conceded, as the court is aware, based on simply it felt like the right thing to do. All of us missed it at court. I won't miss it again. I promise you that. But we did miss it. The court missed it. We didn't even catch it in the pre-sentence report. And in hindsight, I don't know how that happened, but it did. The reason the courts — we would ask the court — we conceded and would ask the court to consider reversing and remanding for sentencing is because we feel that based on these facts, it's in the best interest of justice, and it feels like the right thing to do. First of all, that's a five-year minimum. And Judge Mazant — you know, I've had the experience in front of Judge Mazant that since then, he would definitely have not sentenced Mr. Suarez to that type of sentence if he could. One of the reasons is his criminal history. He does not have a significant criminal history. Judge Mazant has shown since then that sometimes he'll — he will not go, obviously, below the statutory minimum. He can't. But he will vary downward when someone doesn't have a criminal history, almost regardless of what type of case it is. So for those reasons, we conceded. However, the court does not have to consider that, and we're aware of that. The second question the court asked is should the court consider whether or not Mr. Suarez — I'm sorry — decided a claim of plain error where the issue is not adequately briefed. And whether or not — the third question was whether the Department of Justice agrees that the cases decided before this were decided correctly. We do. It looks like a lot of those were based on a fact-specific inquiry, which is what the discretion should turn on and what it does turn on in all of those cases. So for those reasons, we do agree that all those cases were decided correctly. Well, those cases, the ones that we cited to you and you did address and respond and said they were correctly decided, some were published and some not published, they all contain the blanket statement, I'm paraphrasing, but that failure to brief the four prongs, and particularly the fourth prong, is fatal. They didn't say anything about being fact-specific. It was just a matter of laying out what the law is in this circuit about what you have to raise, and that's consistent, as you well know, with what the government often insists to, which is the blue brief didn't raise certain issues. Those issues are waived. And I agree with the court, and also we will continue to exercise that fact. We will not agree to a waiver. We will not concede, I'm sorry, if they fail to properly brief the issue in most cases. However, we would request that the court consider, continue to exercise its discretion when fact-specific cases, specific cases, rarely dictate that maybe the discretion should be used. Let me also mention, address myself to your supplemental letter, and it was responsive to the three questions, and you cited the one exception that you found, which was U.S. v. Naria, which was an unpublished opinion, nonetheless it's an opinion of this court, and you said that there the fourth prong wasn't briefed, but if you had gone back and looked carefully at the docket in that case, you would have found that what we did in that case was ask for supplemental briefing, because the United States had issued the Johnson case, and on supplemental briefing, in fact, the fourth prong was briefed. So your letter was inaccurate, not intentionally so, on that point. So there are no cases that you've pointed us to in which we've granted plain error view and fourth prong relief where it wasn't briefed. I agree with the court. What does adequate briefing constitute? Because he did say in this case that the omission was not a minor one, and had the jury attributed the pistol to Mr. Suarez and not the disassembled Winchester shotgun, the mandatory minimum would have remained at 5 years instead of being increased to 10. Now, the only words that aren't in there are prong, fourth prong or miscarriage or something like that, but to me that's a pretty clear statement of what the problem  It is, Your Honor, and I agree with that. I think Mr. Suarez's counsel is the one who raised it on appeal. He's the one who noticed the error. And then he did state in his fourth issue, he did state that it was plain error. He did not fully brief out all four of the prongs, but he's the one who noticed the error. It feels unfair to Mr. Suarez that his attorney was able to raise it, did raise it, did not adequately brief it, but raised it. And it feels unfair that because Mr. Whalen did not specifically argue each prong, that Mr. Suarez should be penalized by being sentenced to 5 extra years without that being presented to a jury like it should have. He didn't even recognize that the four prongs exist. You will agree with me, I hope, that we have an adversarial system, not an inquisitorial system. I absolutely do agree, Your Honor. But here, all the brief did was mention the words clear error. I think it mentioned it in about three times, but made no effort to indicate what that means. So I just don't understand how it is. You agree that the first three prongs by themselves are not sufficient. Mr. Whalen says they are. In the right factual context, you establish the first three, you don't have to do the fourth. Our case law says to the contrary. I hope you still agree to that. I absolutely do, Your Honor. The Rivera case, several of the cases say that. You can't combine the third prong into the fourth prong. That's clear. It's clear that the Court is requesting that that be briefed. And I'm not saying it shouldn't. It should be briefed. It should be thoroughly hashed out in an appellate's brief. However, at the same time, when, you know, we wanted to use in this case our prosecutorial discretion simply because it felt like Mr. Suarez was going to be prejudiced by the fact,  And we can get to that in a minute. I don't want to cut you off from that. You have plenty of time to discuss that. But consider the consequences of the position that you've taken here. If we were to write a published opinion that examined carefully what has happened procedurally in terms of waiver or not waiver and what happened in the district court and what happened here, this would be the first case that I know of in which we would be granting relief where the defendant not only failed to raise the issue at all in the district court, but failed to live up to any kind of an obligation to brief a plain error review on appeal. I mean, that would substantially undermine the position of the Department of Justice in future cases. And you know it would be cited in every single case in which plain error review is raised. Now, I'm not going to try to tell you how to present your cases, but that undermines everything that the United States has done for years. And Judge Higginson with his career path maybe knows this better than I, and he may disagree and is free to do so. But it just seems to me that that's a dramatic change, of course, if we were to write it that way. Is that what you want us to do? Not at all, Your Honor. I'm not asking for that at all. As in the Naria case, and as the Court pointed out, I did not go back into the record notes from that. However, in the Naria case, it didn't say whether — in fact, it specifically says the Court's not saying whether or not it would have exercised its discretion on the fourth point. It's just taking into consideration that the government conceded and remanded for resentencing. That's all we're asking for. We're not saying the Court can't do it. We are not — certainly not asking the Court to say you don't have to brief the fourth prong at all. And we don't want that, because we do believe in most cases that we will be arguing that an appellant waived it if they don't brief it. Simply, in this case, on these specific facts, we're just asking the Court to acknowledge that the government's conceded based on its prosecutorial discretion. And, again, not — as it did in Naria, just say we're not commenting on our discretion. What we're saying is we're taking into consideration that the government conceded. Okay. You've already said all that, and I appreciate that. I don't mean to cut you off, and I want to give you plenty of time to get to the specific facts. Okay. Is the position you're taking here — does it have the approval of the acting U.S. attorney? It does. This has gone through — All right. And has it been reviewed by main justice? It has been — yes. It has gone through my appellate chief. When the Fifth Circuit asked for the Department of Justice's position, I don't want it to just be me. So it's gone through the appellate chief. The appellate chief, Tracy Kenner, has contacted the Department of Justice, and they are on board with what our response was in the letter brief, definitely. Okay. And then I keep promising you, so I'll give you a chance now to address what is it about this case that would satisfy the rare requirements of the fourth prong, particularly given the fact that it's in the record — correct me if I'm wrong, but it's in the record that the sawed-off shotgun was present, although not submitted to the jury, as everyone concedes. So what would seem unfair, given the potential waiver here, of having the additional sentence when, in fact, the record seems to support the presence of the weapon on which the additional sentence was based? Right. What seems unfair, what was strange about this case, and I believe that it was trial counsel's trial strategy, was to essentially tell the jury that counts one and two are probably true, but counts three and four weren't. Counts three and four were the two separate sawed-off shotguns. One of the sawed-off shotguns was in another room. That was not the one put in count two. The other one was in the room with Mr. Suarez, and the drug-making materials, the methamphetamine, all those things. That's what makes it feel unfair and seem unfair. Additionally, as far as the fairness to the proceedings, of course, this is not going to be a publicized case. It's one of many. However, to say that once the government noticed this problem, although the judge didn't notice it at sentencing, if for some reason that were presented to the public, that, everybody knew it was a mistake, but we're going to go ahead and sentence him to five years extra, that's why it feels unfair and not in the interest of justice. So for those reasons, it's a little bit different. Now, had Mr. Suarez even not, you know, just had a blanket, I didn't do any of this, you know. And then the jury found anyway, which they did, they found anyway that he did possess both sawed-off shotguns. That might even be a little different, but because of the difference between these two I did, these two I didn't. It felt even a little bit more unfair. It sort of. I mean, that logic is helpful to me. It is sort of proves the point the government always should confess when they feel it's wrong, but it's still worth briefing out, right? If you brief out that fourth prong, you can hit on each of these points. You can say consecutive time, a lot of it, low criminal history. I think Judge Mazant specifically said he wished he could have gone lower. Right. Maybe then you could brief out, look, we haven't found a single O'Brien error that was excused. It's a tricky thing to spot. It's just coming in. All those things could sort of then help us. I guess you could even point out otherwise it's a for sure habeas, so it's going to take a lot of judicial economy. Right. So if you spell that out, then it's the government saying here's why rather than just stopping. Exactly. And in hindsight and in preparation for this case, I mean, in complete candor, I've learned a lot about plenary review and will, of course, use that in my future practice. Is it still true from my days, Judge Smith was nice to remark to that, if the government is going to confess in this court error on behalf of district court, there has to be approval at some level from Washington. So in other words, consultation prior to our letter request, just the fact in your brief you were going to say meant that Washington had looked at this. Absolutely. In fact, in preparing the original brief, there are some other cases that are a little bit contrary but were never officially overruled. However, we still felt that based on O'Brien and some of the other cases, that this was the way to go to concede error. So, yes, we always go through our appellate chief and then she always goes through DOJ if we're going to concede any issue. I, you know, we don't like to concede. That's not my practice. To want to concede, obviously, we want to do it right the first time. But when it feels unfair and it feels not in the interest of justice, it feels like the right thing to do. Again, Tracy Kent is your appellate chief. She's been around for a long time. She has. She has. And she's, in my opinion, very wise. On the possession proof, the Ithaca shotgun is the one in the next room. The Winchester one is the one in this room. Is that correct? That's correct. What was your best proof supporting counts 3 and 4? Is it easy just to give a record cite? In other words, did any witness, including the girl, the flip, Erica, ever say this sawed-off shotgun, count 3, this 4, was possessed by him or dominion control? Right. Does that exist? That does exist. As the Court, Mr. Justice Higginson pointed out a minute ago, the child molester is the one who did. He actually came across as credible, you know. He did say that that was a firearm. And he was a former Marine. That came out as well. He worked with firearms. So he recognized the firearm and he was adamant that that was a firearm, that when he went to make the drug deals in that room, that firearm was there. When you say that, the Winchester, the Ithaca, or both? The Ithaca. The Ithaca. The one that was charged in count 2. And then corresponding to what count? I'm just wondering about the sufficiency on 3 and 4. Right. Right. I can't remember. Whichever. Whichever. So you think the Ithaca is solidly established by Puckett? He is solid. It is solid. Who best establishes the dominion control over the Winchester? That alone is when the officers went in, Suarez was there on the bed. You could see part of the shotgun sticking out right under the bed where Suarez was. Three pieces. It was in three pieces. And how does that furtherance of a drug trafficking crime, how long would it take to put it together? Well, I believe that was just the possession. The furtherance of the drug trafficking crime, I believe, was the other firearm. Although it was in the other room at the time, it was the one that Mr. Puckett saw standing up in the room when they did the drug transactions. So that one was possession of a sawed-off shotgun that was in there. It was in there with the methamphetamine, the scales in plain view, the surveillance cameras. Did the jury ask for whether there was prints? For prints? I don't specifically remember. They almost always do. We try to nip that in the bud, obviously, in jury selection. We did not have prints. Of course, we rarely have prints. So, you know, it was the totality of the circumstances, for sure, based on whether they. And then also I believe it was the Winchester. Ms. Gutierrez also testified that they both knew that firearm was in there during those drug transactions. So if this sentence were affirmed, which would include the additional five years, I think I hear you saying, and feel free to correct me if I'm wrong, that based on what's in the record, I'm not talking about what was submitted to the jury, but what's in the record, that Mr. Suarez would not be serving that five years on the basis of something that didn't happen. I did a double negative, but I hope you understand my question. Right. Probably not. That's why I wish I would have submitted it to the jury. Chances are they would have found that both firearms were used in the furthers, but we don't know that. My obvious point is that goes to whether it not only affects, but seriously affects fairness of the proceeding. And based on how you've just answered my question very candidly and professionally, I don't see any unfairness here. He's serving the five years, and it's in the record that that's what happened. I can't imagine that we would say that it meets that standard. Well, and that's what I was saying a minute ago. The fact that he distinguished in his closing argument to me makes it a little more egregious. The fact that he said, I didn't possess those two guns. I did possess the pistol. He didn't say I did possess the pistol, but he essentially admitted to the first two counts and then not those second two, which makes it feel unfair. Also, again, it feels like it's the right thing to do. Of course, I agree with, I think Judge Owen brought it up, probably what would happen if the court did not, if the court affirmed it would be reviewed on habeas for ineffective assistance of counsel, which would address the issue again. All right. Thank you, Ms. Smith. Ineffective of counsel on a 2255? Right. Right. What kind of ineffective? What would the issue be? For failing to raise the issue that increased it. On a deal or in the trial court? Probably both. All right. Thank you, Ms. Smith. Thank you. Mr. Whalen, you've saved time for rebuttal. First of all, I'd like to just take a moment to recognize that the government did concede this, and I do appreciate their professionalism in that. The last thing I want to say is just clarify, is that I'm not disregarding the precedent this Court has set, that you still have to meet the fourth prong. I think under the facts of this case, clearly the fairness and integrity of the proceedings were at stake here because he was sentenced to an additional five years that a jury, this Supreme Court has said that a jury must make that finding. And to say, even though we could parse it out and say the jury may have found that he possessed that shotgun and, therefore, we don't have, it didn't affect the fairness of it, I don't think that's what the Supreme Court meant when they said, if you're going to be sentenced to an increased sentence, a jury has to make that finding. The jury never made that finding. It was never asked to make that finding. It should have been, and it wasn't. And so, therefore, the inability or the failure for that to happen did affect the fairness because then we're left wondering, well, probably the jury could have found that, but we don't know, and we'll never know because they were never submitted the issue. So I do think the fairness and integrity has been affected. Mr. Suarez has been affected. And we can't lose sight of the fact that Mr. Suarez right now is going to serve an additional five years based on an issue that a jury never decided. And I think at the end of the day, based on the precedent that we have and the arguments that I've made in the letter brief, that this issue is before the Court, and the Court can decide it. And I don't know. Roberts. Mr. Gutierrez, the co-conspirator, she, in her factual basis, said both guns were in furtherance of their conspiracy to move meth, right? I believe that's correct. Did she then say that consistently? She said the Winchester shotgun was in furtherance? My recollection based on her testimony was she did not. I mean, she kind of equivocated on that, but did say, you know, look, I don't want to see anything happen to Paul. That may be a reason why she did that under oath. And so I do think at the end of the day, the issue is before you, and I think his sentence should be remanded for further sentencing. Thank you, Your Honor. Thank you, Mr. Whalen. And we notice that you're court appointed, and we wish to express our appreciation for your willingness to testify.